**Ramon MAGAYANES, Plaintiff,**

v.

**T. J. TERRANCE, et al., Defendants.**

**No. 80 C 1299.**

United States District Court,
N. D. Illinois, E. D.

May 14, 1982.

Lonny Ben Ogus, Chicago, Ill., for plaintiff.

Jennifer Duncan-Brice, Asst. Corp. Counsel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Ramon Magayanes ("Magayanes") has sued the City of Chicago (the "City") and four of its police officers, claiming defendants violated his rights under the Constitution and 42 U.S.C. §§ 1983 ("Section 1983") and 1985 in connection with the officers' November 13, 1979 arrest of Magayanes. Magayanes has moved for summary judgment on Complaint Count III, based on injuries suffered by him during his post-arrest transportation to the police station in a squadrol. Magayanes' motion must be denied.

### Facts

After arresting Magayanes the police officers placed him in the rear of the squadrol with his hands cuffed behind his back. No one rode with him on the way to the station (presumably in accordance with police rules). There is disagreement whether the officers driving the squadrol could observe Magayanes through a glass partition (the City says "yes," Magayanes "no").

It is however undisputed that the squadrol's rear section was spartan in the extreme. There were plain benches to sit on, but the interior was entirely metal. There were no cushions or seat belts attached to the benches.

Upon arrival at the police station Magayanes was found on the metal floor, hands still cuffed behind him, bleeding from his mouth and nose. This opinion assumes turbulence during the ride had pitched Magayanes forward involuntarily, causing his face to smash against the metal floor of the squadrol.

### Propriety of Summary Judgment

As this Court's August 12, 1981 opinion reflects, Count III rests on the theory that the City's failure to take precautions against known dangers caused by the squadrol's condition amounted to gross negligence or reckless disregard for Magayanes' safety. *See White v. Rochford*, 592 F.2d

381, 383–84 (7th Cir. 1979). But none of the conditions listed in the "Facts" section of this opinion, even if conceded, come close to establishing anything like gross negligence—or even simple negligence—on the part of the City *as a matter of law.*

Indeed, summary judgment is precluded by the single affidavit of Robert Schwind, an instructor at the Chicago Police Training Academy. Schwind adduces several reasons why many of the squadrol's features are "reasonable" under the circumstances.[1] For example, the use of an all-metal interior is necessitated by sanitary considerations, for transporting injured, sick and (occasionally) dead persons puts a premium on being able to clean the squadrol's interior with a hose and scrub brush. Moreover, considerations of safety to police officers are implicated. Cushions or wood storage lockers could be set on fire or turned into ersatz weapons by resisting arrestees. Seatbelts too can be converted into weapons. Safety of passengers is also involved, because interior materials could be used for self-imposed injuries. Finally, a reasonable inference could be drawn that like considerations affect the discretionary decision for officers to be separated physically from persons being transported.

In sum, the all-metal interior and the lack of seat belts and cushions are the primary causes (in a "but for" sense) asserted for Magayanes' injuries. But the City has produced evidence from which a jury could find the City's lack of such amenities was reasonable in the circumstances.

One more point cuts decisively against a finding of "gross negligence" as a matter of law at this stage of the litigation. Magayanes makes no showing that anyone else has suffered like injury. Moreover, without disparaging the injuries Magayanes sustained in the squadrol, they were at least not grievous. This Court may then appropriately balance the competing considerations: the apparent low probability of the accident's occurrence, coupled with the relatively small gravity of the harm, as against the cost to the City of taking precautions to

prevent the kind of injury that befell Magayanes. *See* the analyses in *Sutton v. City of Milwaukee,* 672 F.2d 644, 645–646 (7th Cir. 1982) and *United States v. Carroll Towing Co.,* 159 F.2d 169, 173 (2d Cir. 1947).

Because this action is still at the pretrial stage, the City has advanced no proof of the probable direct costs of taking the argued-for precautions. But even at this point the City demonstrated other possible "costs": increased threats of harm to police officers; increased numbers of injuries; increased maintenance and cleaning costs; perhaps increased costs for construction of "well-equipped" squadrols. Balancing such costs against the apparent low probabilities of actual harm of the kind Magayanes sustained, multiplied by the low level of gravity of the injury, bars summary judgment against the City. Certainly that conclusion follows where Magayanes must prove *gross* negligence by the City.

*Conclusion*

Magayanes' motion for summary judgment as to Count III is denied.

---

1. Under the operative rules for dealing with summary judgment motions, his factual statements must be taken as true. They are in fact uncontroverted by Magayanes.